JUDGE KOELT

MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael A. Faillace [MF-8436]
60 East 42nd Street, suite 2020
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

15 CV 4158

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK -**
-----------------------------------------------------X
FAUSTINO ALMAZO, ANTHONY MEJIA,
BERNABE DAMIAN, CARLOS TIPAZ,
DAMIAN MEYO VARELA, DAVID
MACARIO YAT ALVAREZ, RUFINO JOEL
YAT GONZALEZ, JOSE YAT CHIC
(A.K.A. EDGAR CASTRO), MIGUEL LUIS
YAT CHIC (A.K.A. MARCOS MIGUEL
YAT) and EDGAR CASTILLO, *individually
and on behalf of others similarly situated,*

**COMPLAINT**

**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b)**

**ECF Case**

                              *Plaintiffs,*

                      -against-

ENERGY RESOURCES PERSONNEL LLC.
(d/b/a DIG INN), PUMP 17TH STREET LLC
(d/b/a DIG INN), PUMP 52ND STREET LLC
(d/b/a DIG INN), PUMP HOLDINGS, LLC
(d/b/a DIG INN) and ADAM ESKIN,

                              *Defendants.*
-----------------------------------------------------X

Plaintiffs Faustino Almazo, Anthony Mejia, Bernabe Damian, Carlos Tipaz, Damian

Meyo Varela, David Macario Yat Alvarez, Rufino Joel Yat Gonzalez , Jose Yat Chic (a.k.a.

Edgar Castro), Miguel Luis Yat Chic (a.k.a. Marcos Miguel Yat) and Edgar Castillo individually

and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their

attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against

Energy Resources Personnel LLC (d/b/a Dig Inn), Pump 17th Street LLC. (d/b/a Dig Inn), Pump

52nd Street LLC (d/b/a Dig Inn), Pump Holdings, LLC (d/b/a Dig Inn) ("Defendant Corporations"), and Adam Eskin, (collectively "Defendants") allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs are current and former employees of Defendants Energy Resources Personnel LLC (d/b/a Dig Inn), Pump 17th Street LLC (d/b/a Dig Inn), Pump 52nd Street LLC (d/b/a Dig Inn), Pump Holdings, LLC (d/b/a Dig Inn) and Adam Eskin.

2.      Defendants own, operate, or control a chain of health food restaurants in New York City, two of which are located at 17 East 17th Street, New York, NY 10003 (hereafter "the 17th Street location") and 150 East 52nd Street, New York, NY 10022 (hereafter "the 52nd Street location") both operating under the name "Dig Inn."

3.      Upon information and belief, Individual Defendant Adam Eskin serves or served as owner, manager, principal, or agent of Defendant Corporations, and through these corporate entities operates or operated the restaurants as a joint or unified enterprise.

4.      Plaintiffs are current and former employees of Defendants.

5.      Plaintiffs have been primarily employed as delivery workers but they have been required to spend a considerable part of the work day performing non-tipped, non-delivery duties, including various restaurant duties such as sweeping and mopping, carrying and stocking deliveries in the basement, bringing up vegetables and other items from the basement to the kitchen, cutting vegetables, transferring dressing from a large container to small containers, cleaning the bathrooms, kitchen, walls, windows and sidewalk, taking down the garbage to the basement, rolling up utensils in napkins and putting them in a container and transporting food and other items to and from other Dig Inns (hereafter the "non-tipped, non-delivery duties").

- 2 -

6.      At all times relevant to this Complaint, Plaintiffs have worked for Defendants in excess of 40 hours per week, without appropriate compensation for the hours over 40 per week that they have worked.

7.      At all times relevant to this Complaint, Defendants have maintained a policy and practice of requiring Plaintiffs and other employees to work without providing the minimum wage and overtime compensation required by federal and state law and regulations.

8.      Defendants have employed and accounted for Plaintiffs as delivery workers in their payroll, but in actuality their duties have required greater or equal time spent in non-tipped, non-delivery duties.

9.      Regardless, at all times Defendants have paid these Plaintiffs at the tip-credit rate.

10.     Under state law, Defendants have not been entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day (whichever was less in each day) (12 N.Y.C.R.R. §146).

11.     Upon information and belief, Defendants have employed the policy and practice of disguising Plaintiffs' actual duties in payroll records to avoid paying Plaintiffs at the minimum wage rate and to enable them to pay Plaintiffs at the lower tip-credited rate by designating them as delivery workers instead of non-tipped employees.

12.     Defendants have also maintained a policy and practice of requiring employees to purchase "tools of the trade" such as bicycles and other equipment necessary for their jobs at the employees' own expense.

13.     Defendants' conduct is extended beyond Plaintiffs to all other similarly situated employees.

- 3 -

14.     At all times relevant to this complaint, Defendants have maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

15.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum wages and overtime wage orders pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"),, including applicable liquidated damages, interest, attorneys' fees, and costs.

16.     Plaintiffs seek certification of this action as a collective action on behalf of themselves individually and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

18.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims have occurred in this district. Defendants maintain their corporate headquarters and offices within this district, and Defendants operate their restaurants in this district. Further, Plaintiffs have been employed by Defendants in this district.

**THE PARTIES**

*Plaintiffs*

19.     Plaintiff Faustino Almazo ("Plaintiff Almazo" or "Mr. Almazo") is an adult individual residing in New York County, New York.  Plaintiff Almazo was employed by Defendants from approximately 2001 until on or about December 12, 2014 at the 17th street location.

20.     Plaintiff Anthony Mejia ("Plaintiff Mejia" or "Mr. Mejia") is an adult individual residing in Bronx County, New York.  Plaintiff Mejia was employed by Defendants from approximately December 2014 until on or about March 2015 at the 17th street location.

21.     Plaintiff Bernabe Damian ("Plaintiff Damian" or "Mr. Damian") is an adult individual residing in Queens County, New York.  Plaintiff Damian has been employed by Defendants from approximately November 26, 2012 until on or about February 2013 at the 52nd Street location and from approximately January 2014 until the present date at the 17th street location.

22.     Plaintiff Carlos Tipaz ("Plaintiff Tipaz" or "Mr. Tipaz") is an adult individual residing in Kings County, New York. Plaintiff Tipaz was employed by Defendants from approximately January 2014 until on or about November 2014 at the 17th street location.

23.     Plaintiff Damian Meyo Varela ("Plaintiff Varela" or "Mr. Varela") is an adult individual residing in Queens County, New York.  Plaintiff Varela was employed by Defendants from approximately March 2012 until on or about July 2012 and from approximately October 2014 until on or about March 2015 at the 17th street location.

24.     Plaintiff David Macario Yat Alvarez ("Plaintiff Alvarez" or "Mr. Alvarez") is an adult individual residing in Bronx County, New York.  Plaintiff Alvarez was employed by

- 5 -

Defendants from approximately December 2014 until on or about April 8, 2015 at the 17th street location.

28. Plaintiff Rufino Joel Yat Gonzalez ("Plaintiff Gonzalez" or "Mr. Gonzalez") is an adult individual residing in Kings County, New York. Plaintiff Gonzalez was employed by Defendants from approximately October 2013 until on or about February 2015 at the 17th street location.

26. Plaintiff Jose Yat Chic (a.k.a. Edgar Castro) ("Plaintiff Chic" or "Mr. Chic") is an adult individual residing in Bronx County, New York. Plaintiff Chic was employed by Defendants from approximately October 2013 until on or about March 2015 at the 17th street location.

27. Plaintiff Miguel Luis Yat Chic (a.k.a. Marcos Miguel Yat) ("Plaintiff Yat" or "Mr. Yat") is an adult individual residing in Kings County, New York. Plaintiff Yat has been employed by Defendants from approximately April 2012 until the present date at the 17th street location.

28. Plaintiff Edgar Castillo ("Plaintiff Castillo" or "Mr. Castillo") is an adult individual residing in Kings County, New York. Plaintiff Castillo has been employed by Defendants from approximately November 2014 until the present date at the 17th street location.

*Defendants*

29. At all relevant times, Defendants have owned, operated, or controlled health food restaurants located at 17 East 17th Street, New York, NY 10003 and 150 East 52nd Street, New York, NY 10022 under the name of Dig Inn.

- 6 -

30.     Upon information and belief, Energy Resources Personnel LLC (d/b/a Dig Inn) is a domestic corporation organized and existing under the laws of the State of New York.

31.     Upon information and belief, Energy Resources Personnel LLC maintains a principal place of business at 17 East 17th Street, New York, NY 10003.

32.     Upon information and belief, Pump 17th Street LLC (d/b/a Dig Inn) is a domestic corporation organized and existing under the laws of the State of New York.

33.     Upon information and belief, Pump 17th Street LLC maintains a principal place of business at 17 East 17th Street, New York, NY 10003.

34.     Upon information and belief, Pump 52nd Street LLC (d/b/a Dig Inn) is a domestic corporation organized and existing under the laws of the State of New York.

35.     Upon information and belief, Pump 52nd Street LLC maintains a principal place of business at 150 East 52nd Street, New York, NY 10022.

36.     Upon information and belief, Pump Holdings, LLC (d/b/a Dig Inn) is a domestic corporation organized and existing under the laws of the State of New York.

37.     Upon information and belief, Pump Holdings, LLC maintains a principal place of business at 150 East 52nd Street, New York, NY 10022.

38.     Defendant Adam Eskin is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Adam Eskin is sued individually in his capacity as an owner, officer and/or agent of the Defendant Corporations. Defendant Adam Eskin possesses or possessed operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or has controlled significant functions of Defendant Corporations.  He has determined the wages and compensation of the employees of

- 7 -

Defendants, including Plaintiffs, and has established the schedules of the employees, maintained employee records, and has had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

### *Defendants Constitute Joint Employers*

39.     Defendants operate health food restaurants located in the Flat iron and Midtown East sections of Manhattan in New York City.

40.     Defendants maintain their principal places of business at 17 East 17th Street, New York, NY 10003 and 150 East 52nd Street, New York, NY 10022.

41.     The individual Defendant, Adam Eskin, possesses operational control over Defendant Corporations, possesses an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations.

42.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

43.     Each Defendant has possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

44.     Defendants jointly have employed Plaintiffs, and all similarly situated individuals, and are Plaintiffs' (and all similarly situated individuals') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

- 8 -

45.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

46.     Upon information and belief, Individual Defendant Adam Eskin operates Defendant Corporations as either alter egos of himself, and/or fails to operate Defendant Corporations as entities legally separate and apart from himself, by among other things:

      a.      failing to adhere to the corporate formalities necessary to operate Defendant Corporations as corporations;

      b.      defectively forming or maintaining the Defendant Corporations, by amongst other things, failing to hold annual meetings or maintaining appropriate corporate records;

      c.      transferring assets and debts freely as between all Defendants;

      d.      operating Defendant Corporations for his own benefit as the sole or majority shareholder;

      e.      operating Defendant Corporations for his own benefit and maintaining control over them as closed corporations;

      f.      intermingling assets and debts of his own with Defendant Corporations;

      g.      diminishing and/or transferring assets to avoid full liability as necessary to protect his own interests, and

      h.      other actions evincing a failure to adhere to the corporate form.

47.     At all relevant times, Defendants have been Plaintiffs' employers within the meaning of the FLSA and New York Labor Law.  Defendants have had the power to hire and fire Plaintiffs, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiffs' services.

- 9 -

48.     In each year from April 2011 to the present, Defendants, both separately and jointly, have had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

49.     In addition, upon information and belief, Defendants and/or their enterprise have been directly engaged in interstate commerce. As an example, numerous items that have been used in the restaurants on a daily basis are goods produced outside of the State of New York.

### Individual Plaintiffs

50.     The Plaintiffs are current and former employees of the Defendants who are (were) ostensibly employed as delivery workers. However, they have spent a considerable amount of time performing the non-tipped and non-delivery duties described above.

51.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

### Plaintiff Faustino Almazo

52.     Plaintiff Almazo was employed by Defendants from approximately 2001 until on or about December 12, 2014 at the 17th Street location.

53.     Defendants ostensibly employed Plaintiff Almazo as a delivery worker.

54.     However, Plaintiff Almazo also was required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

55.     Although Plaintiff Almazo ostensibly was employed as a delivery worker, he spent over three hours of each day performing non-delivery work.

56.     Plaintiff Almazo regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

57.     Plaintiff Almazo's work duties required neither discretion nor independent

- 10 -

judgment.

58.     From approximately April 13, 2011 until on or about October 2014, Plaintiff
Almazo worked from approximately 11:00 a.m. until on or about 3:00 p.m. Mondays through
Fridays, and from approximately 10:00 a.m. until on or about 8:00 or 9:00 p.m. on Sundays;
however, Plaintiff Almazo frequently worked additional hours up to approximately 43 hours per
week (typically 30 to 43 hours per week).

59.     From approximately October 2014 until on or about December 12, 2014, Plaintiff
Almazo worked from approximately 11:00 a.m. until on or about 4:00 p.m. on Sundays, and
from approximately 11:00 a.m. until on or about 3:00 p.m. on Mondays and Tuesdays (typically
13 hours per week).

60.     Throughout his employment with Defendants, Plaintiff Almazo was paid his
wages by check.

61.     From approximately April 13, 2011 until on or about June 2013, Plaintiff Almazo
was paid $5.00 per hour.

62.     From approximately June 2013 until on or about December 12, 2014, Plaintiff
Almazo was paid $5.65 per hour.

63.     Plaintiff Almazo's pay did not vary even when he was required to stay later or
work a longer day than his usual schedule.

64.     In fact, Plaintiff Almazo often was required to work additional hours and was not
paid the correct overtime rate for hours worked over 40.

65.     Defendants required Plaintiff Almazo to purchase "tools of the trade" with his
own funds—including three bicycles for $1400 each, a helmet for $150, three bicycle bells for

$25 each and three sets of lights for $75 each. Thus, the total cost of the "tools of the trade"

Plaintiff Almazo was required to purchase as a deliveryman was approximately $4,500.00.

*Plaintiff Anthony Mejia*

66.    Plaintiff Mejia was employed by Defendants from approximately December 2014

until on or about March 2015 at the 17th street location.

67.    Defendants ostensibly employed Plaintiff Mejia as a delivery worker.

68.    However, Plaintiff Mejia also was required to spend a significant portion of his

work day performing the non-tipped, non-delivery duties described above.

69.    Although Plaintiff Mejia ostensibly was employed as a delivery worker, he spent

over three hours of each day performing non-delivery work.

70.    Plaintiff Mejia regularly handled goods in interstate commerce, such as food and

other supplies produced outside the State of New York.

71.    Plaintiff Mejia's work duties required neither discretion nor independent

judgment.

72.    Throughout his employment with Defendants, Plaintiff Mejia regularly worked in

excess of 40 hours per week.

73.    From approximately December 2014 until on or about March 2015, Plaintiff

Mejia worked from approximately 4:00 p.m. until on or about 11:00 p.m. Mondays through

Saturdays (typically 42 hours per week).

74.    Throughout his employment with Defendants, Plaintiff Mejia was paid his wages

by check.

75.    From approximately December 2014 until on or about March 2015, Plaintiff

Mejia was paid $5.65 per hour.

76.     Plaintiff Mejia was only paid overtime at his straight hourly rate for hours worked over 40.

77.     Defendants did not provide Plaintiff Mejia with meal breaks or rest periods of any kind.

78.     Defendants required Plaintiff Mejia to purchase "tools of the trade" with his own funds—including two bicycles for $200, a basket for $30 and a helmet for $50. Thus, the total cost of the "tools of the trade" Plaintiff Mejia was required to purchase as a deliveryman was approximately $480.00.

*Plaintiff Bernabe Damian*

79.     Plaintiff Damian was employed by Defendants from approximately November 26, 2012 until on or about February 2013 at the 52nd street location, and has been employed by defendants from approximately January 20, 2014 until the present date at the 17th street location.

80.     Defendants ostensibly have employed Plaintiff Damian as a delivery worker.

81.     However, Plaintiff Damian also has been required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

82.     Although Plaintiff Damian ostensibly has been employed as a delivery worker, he has spent approximately two hours of each day performing non-delivery work.

83.     Plaintiff Damian regularly has handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

84.     Plaintiff Damian's work duties have required neither discretion nor independent judgment.

85.     From approximately November 26, 2012 until on or about February 2013, Plaintiff Damian worked at the 52nd Street location from approximately 11:00 a.m. until on or

- 13 -

about 2:00 p.m. two days per week, from approximately 11:00 a.m. until on or about 3:00 p.m. two days per week, and from approximately 12:00 p.m. until on or about 3:00 p.m. on Sundays (typically 17 hours per week).

86.     From approximately January 20, 2014 until on or about March 2015, Plaintiff Damian worked at the 17th Street location from approximately 11:00 a.m. until on or about 3:00 p.m. Mondays through Thursdays, and from approximately 10:00 a.m. until on or about 3:00 p.m. on Sundays (typically 21 hours per week).

87.     From approximately March 2015 until the present date, Plaintiff Damian has worked at the 17th Street location from approximately 4:00 p.m. until on or about 9:00 p.m. Mondays through Thursdays, and from approximately 11:00 a.m. until on or about 3:00 p.m. on Fridays (typically 24 hours per week).

88.     Throughout his employment with Defendants, Plaintiff Damian has been paid his wages by check.

89.     From approximately November 26, 2012 until on or about February 2013, and from January 20, 2014 until on or about July 2014, Plaintiff Damian was paid $5.65 per hour.

90.     From approximately July 2014 until the present date Plaintiff Damian has been paid $5.65 per hour and $9.00 per hour for hours that he records as doing non-delivery work, particularly when he is sent to other Dig Inn restaurants to bring supplies.

91.     Defendants have required Plaintiff Damian to purchase "tools of the trade" with his own funds—including 2 bicycles for $150 each, a basket for $30, two sets of lights for $25 each, one bell for $20 and one helmet for $35. Thus, the total cost of the "tools of the trade" Plaintiff Damian has been required to purchase as a deliveryman is approximately $435.00.

*Plaintiff Carlos Tipaz*

92.     Plaintiff Tipaz was employed by Defendants from approximately January 2014 until on or about November 2014 at the 17th Street location.

93.     Defendants ostensibly employed Plaintiff Tipaz as a delivery worker.

94.     However, Plaintiff Tipaz was also required to spend a significant portion of his work day performing the non-tipped duties described above.

95.     Although Plaintiff Tipaz was ostensibly employed as a delivery worker, he spent over two hours of each day performing non-delivery work throughout his employment with Defendants.

96.     Plaintiff Tipaz regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

97.     Plaintiff Tipaz's work duties required neither discretion nor independent judgment.

98.     From approximately January 2014 until on or about February 2014, Plaintiff Tipaz worked from approximately 11:00 a.m. until on or about 3:00 p.m. Mondays through Fridays, and from approximately 10:00 a.m. until on or about 3:00 p.m. on Saturdays (typically 25 hours per week).

99.     From approximately March 2014 until on or about November 2014, Plaintiff Tipaz worked from approximately 12:00 p.m. until on or about 3:00 p.m. Mondays through Fridays, and from approximately 10:00 a.m. until on or about 3:00 p.m. on Saturdays (typically 20 hours per week).

100.    Throughout his employment with Defendants, Plaintiff Tipaz was paid his wages by check.

101.    From approximately January 2014 until on or about November 2014, Plaintiff

- 15 -

Tipaz was paid $5.65 per hour, except that on Saturdays for one hour extra of stocking items he was paid $7.50 for that one hour.

102.    Defendants required Plaintiff Tipaz to purchase "tools of the trade" with his own funds—including two bicycles one for $400 and one for $200, and a basket for $35. Thus, the total cost of the "tools of the trade" Plaintiff Tipaz was required to purchase as a deliveryman was approximately $635.00.

*Plaintiff Damian Meyo Varela*

103.    Plaintiff Varela was employed by Defendants from approximately March 2012 until on or about July 2012, and from approximately October 2014 until on or about March 2015 at the 17th Street location.

104.    Defendants ostensibly employed Plaintiff Varela as a delivery worker.

105.    However, Plaintiff Varela also was required to spend a significant portion of his work day performing the non-tipped duties described above.

106.    Although Plaintiff Varela ostensibly was employed as a delivery worker, he spent approximately 2 hours of each day performing non-delivery work throughout his employment with Defendants.

107.    Plaintiff Varela regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

108.    Plaintiff Varela's work duties required neither discretion nor independent judgment.

109.    From approximately March 2012 until on or about July 2012, Plaintiff Varela worked from approximately 11:00 a.m. until on or about 3:00 p.m. five days for week (typically 20 hours per week).

110. From approximately October 2014 until on or about November 2014, Plaintiff Varela worked from approximately 11:30 a.m. until on or about 3:00 p.m. Mondays through Thursdays and from approximately 9:00 a.m. until on or about 3:00 p.m. on Saturdays (typically 20 hours per week).

111. From approximately November 2014 until on or about March 2015, Plaintiff Varela worked from approximately 11:30 a.m. until on or about 3:00 p.m. Mondays through Thursdays and from approximately 10:00 a.m. until on or about 3:00 p.m. on Saturdays (typically 19 hours per week).

112. Throughout his employment with Defendants, Plaintiff Varela was paid his wages by check.

113. From approximately March 2012 until on or about July 2012, Plaintiff Varela was paid $5.00 per hour.

114. From approximately October 2014 until on or about March 2015, Plaintiff Varela was paid $5.65 per hour.

115. Defendants required Plaintiff Varela to purchase "tools of the trade" with his own funds—including three bicycles (one for $200, one for $100 and one for $220), and two baskets for $30 each. Thus, the total cost of the "tools of the trade" Plaintiff Varela was required to purchase as a deliveryman was approximately $580.00.

### Plaintiff David Macario Yat Alvarez

116. Plaintiff Alvarez was employed by Defendants from approximately December 2014 until on or about April 8, 2015 at the 17th street location.

117. Defendants ostensibly employed Plaintiff Alvarez as a delivery worker.

118.    However, Plaintiff Alvarez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

119.    Although Plaintiff Alvarez was ostensibly employed as a delivery worker, he spent between one and a half and two hours of each day performing non-delivery work throughout his employment with Defendants.

120.    Plaintiff Alvarez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

121.    Plaintiff Alvarez's work duties required neither discretion nor independent judgment.

122.    From approximately December 2014 until on or about April 8, 2015 Plaintiff Alvarez worked from approximately 11:30 a.m. until on or about 3:00 p.m. Mondays through Fridays (typically 17.5 hours per week).

123.    Throughout his employment with Defendants, Plaintiff Alvarez was paid his wages by check.

124.    From approximately December 2014 until on or about April 8, 2015, Plaintiff Alvarez was paid $5.65 per hour.

125.    Defendants required Plaintiff Alvarez to purchase "tools of the trade" with his own funds—including a bicycle for $500, a basket for $60 and a helmet for $50. Thus, the total cost of the "tools of the trade" Plaintiff Alvarez was required to purchase as a deliveryman was approximately $610.00.

*Plaintiff Rufino Joel Yat Gonzalez*

126.    Plaintiff Gonzalez was employed by Defendants from approximately October 2013 until on or about February 2015 at the 17th Street location.

- 18 -

127.    Defendants ostensibly employed Plaintiff Gonzalez as a delivery worker.

128.    However, Plaintiff Gonzalez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

129.    Although Plaintiff Gonzalez was ostensibly employed as a delivery worker, he spent approximately two hours of each day performing non-delivery work throughout his employment with Defendants.

130.    Plaintiff Gonzalez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

131.    Plaintiff Gonzalez's work duties required neither discretion nor independent judgment.

132.    From approximately October 2013 until on or about February 2014, Plaintiff Gonzalez worked from approximately 11:00 a.m. until on or about 3:00 p.m. Mondays through Fridays, and from approximately 10:00 a.m. until on or about 4:00 p.m. on Saturdays (typically 26 hours per week).

133.    From approximately February 2014 until on or about February 2015, Plaintiff Gonzalez worked from approximately 11:00 a.m. until on or about 3:00 p.m. Mondays through Fridays (typically 20 hours per week).

134.    Throughout his employment with Defendants, Plaintiff Gonzalez was paid his wages by check.

135.    From approximately October 2013 until on or about February 2015, Plaintiff Gonzalez was paid $5.65 per hour, except that when he worked on Saturdays for one hour extra of carrying items down to the basement he was paid $7.50 for that one hour.

136.    Defendants required Plaintiff Gonzalez to purchase "tools of the trade" with his

own funds—including three bicycles (one for $300, one for $400 and one for $450) and a basket for $35. Thus, the total cost of the "tools of the trade" Plaintiff Gonzalez was required to purchase as a deliveryman is approximately $1,185.00.

*Plaintiff Jose Yat Chic (a.k.a. Edgar Castro)*

137.    Plaintiff Chic was employed by Defendants from approximately October 2013 until on or about March 2015 at the 17th Street location.

138.    Defendants ostensibly employed Plaintiff Chic as a delivery worker.

139.    However, Plaintiff Chic also was required to spend a significant portion of his work day performing the non-tipped duties described above.

140.    Although Plaintiff Chic was ostensibly employed as a delivery worker, he spent approximately two hours of each day performing non-delivery work throughout his employment with Defendants.

141.    Plaintiff Chic regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

142.    Plaintiff Chic's work duties required neither discretion nor independent judgment.

143.    From approximately October 2013 until on or about March 2015, Plaintiff Chic worked from approximately 11:00 a.m. until on or about 3:00 p.m. Mondays through Fridays, and from approximately 6:00 p.m. until on or about 9:00 p.m. on Sundays (typically 23 hours per week).

144.    Throughout his employment with Defendants, Plaintiff Chic was paid his wages by check.

145.    From approximately October 2013 until on or about March 2015, Plaintiff Chic was paid $5.65 per hour.

- 20 -

146.   Defendants required Plaintiff Chic to purchase "tools of the trade" with his own funds—including four bicycles (two for $300 each, one for $250 and one for $400) and four baskets for $35 each. Thus, the total cost of the "tools of the trade" Plaintiff Chic was required to purchase as a deliveryman was approximately $1,390.00.

*Plaintiff Miguel Luis Yat Chic (a.k.a. Marcos Miguel Yat)*

147.   Plaintiff Yat has been employed by Defendants from approximately April 2012 until the present date at the 17th Street location.

148.   Defendants ostensibly have employed Plaintiff Yat as a delivery worker.

149.   However, Plaintiff Yat also has been required to spend a significant portion of his work day performing the non-tipped duties described above.

150.   Although Plaintiff Yat has ostensibly been employed as a delivery worker, he has spent over two hours of each day performing non-delivery work.

151.   Plaintiff Yat regularly has handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

152.   Plaintiff Yat's work duties have required neither discretion nor independent judgment.

153.   From approximately April 2012 until on or about January 2015, Plaintiff Yat worked from approximately 11:00 a.m. until on or about 3:00 p.m. Mondays through Fridays (typically 20 hours per week).

154.   From approximately January 2015 until the present date, Plaintiff Yat has worked from approximately 11:30 a.m. until on or about 3:00 p.m. Mondays through Fridays (typically 17.5 hours per week).

155.    Throughout his employment with Defendants, Plaintiff Yat has been paid his wages by check.

156.    From approximately April 2012 until the present date, Plaintiff Yat has been paid $5.65 per hour.

157.    Defendants have required Plaintiff Yat to purchase "tools of the trade" with his own funds—including three bicycles (one for $200, one for $350 and one for $400) and a basket for $35. Thus, the total cost of the "tools of the trade" Plaintiff Yat has been required to purchase as a deliveryman is approximately $985.00.

*Plaintiff Edgar Castillo*

158.    Plaintiff Castillo has been employed by Defendants from approximately November 2014 until the present date at the 17th Street location.

159.    Defendants ostensibly have employed Plaintiff Castillo as a delivery worker.

160.    However, Plaintiff Castillo has also been required to spend a significant portion of his work day performing the non-tipped duties described above.

161.    Although Plaintiff Castillo has ostensibly been employed as a delivery worker, he has spent approximately two hours of each day performing non-delivery work throughout his employment with Defendants.

162.    Plaintiff Castillo regularly has handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

163.    Plaintiff Castillo's work duties have required neither discretion nor independent judgment.

164.    From approximately November 2014 until the present date, Plaintiff Castillo has worked from approximately 11:00 a.m. until on or about 3:30 p.m. Mondays through Thursdays,

and from approximately 10:00 a.m. until on or about 9:00 p.m. on Saturdays (typically 29 hours per week).

165.    Throughout his employment with Defendants, Plaintiff Castillo has been paid his wages by check.

166.    From approximately November 2014 until the present date, Plaintiff Castillo has been paid $5.65 per hour, except on Saturdays he works for one hour extra cleaning and he is paid $9.00 for that extra hour.

167.    Defendants have required Plaintiff Castillo to purchase "tools of the trade" with his own funds—including one bicycle for $400 and one basket for $30. Thus, the total cost of the "tools of the trade" Plaintiff Castillo has been required to purchase as a deliveryman is approximately $430.00.

*Defendants' General Employment Practices*

168.    At all times relevant to this Complaint, Defendants have maintained a policy of requiring some Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage and  overtime, as required by federal and state laws.

169.    Plaintiffs have been victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

170.    Defendants' pay practices have caused Plaintiffs to not receive payment for all their hours worked, resulting in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

- 23 -

171.   Defendants have also maintained a policy and practice of requiring employees to purchase "tools of the trade" such as bicycles and other equipment necessary for their jobs at the employees' own expense.

172.   As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly harmed Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL.

173.   At no time have the Defendants informed the Plaintiffs that they have reduced their hourly wage by a tip allowance.

174.   Defendants have required the Plaintiffs to perform general non-delivery, non-tipped duties in addition to their primary duties as delivery workers.

175.   Plaintiffs have been employed ostensibly as tipped employees by Defendants, although their actual duties have included greater or equal time spent performing non-tipped duties.

176.   Plaintiffs have been paid at the lowered tip-credited rate by Defendants; however, under state law Defendants have not been entitled to a tip credit because Plaintiffs' non-tipped duties have exceeded 20% of each workday (or 2 hours a day, whichever was less) (12 N.Y.C.R.R. § 146).

177.   New York State regulations provide that an employee cannot be classified as a tipped employee "on any day… in which he has been assigned to work in an occupation in which tips are not customarily received." (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

- 24 -

178.    Plaintiffs' duties have not been incidental to their occupation as delivery workers, but instead have constituted entirely unrelated general restaurant work with duties including the non-tipped duties described above.

179.    In violation of federal and state law as codified above, Defendants have classified Plaintiffs as tipped employees and paid them at the tip-credited rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

180.    Upon information and belief, these practices by Defendants have been done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

181.    Defendants have also failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

## FLSA COLLECTIVE ACTION CLAIMS

182.    Plaintiffs bring their FLSA minimum wage, overtime, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period"), as employees of Defendants (the "FLSA Class").

183.    At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them at a one and one-

- 25 -

half their regular rates for work in excess of forty (40) hours per work week, and willfully failing to keep records required by the FLSA.

184.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION
### (VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA)

185.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

186.    At all times relevant to this action, Defendants have been Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants have had the power to hire and fire Plaintiffs, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for their employment.

187.    At all times relevant to this action, Defendants have been engaged in commerce or in an industry or activity affecting commerce.

188.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

189.    Defendants have failed to pay Plaintiffs at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

190.    Defendants' failure to pay Plaintiffs at the applicable minimum hourly rate has been willful within the meaning of 29 U.S.C. § 255(a).

191.    Plaintiffs have been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA)

192.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

193.    Defendants, in violation of the FLSA, have failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of 29 U.S.C. § 207(a)(1).

194.    Defendants' failure to pay Plaintiffs and the putative FLSA Class members overtime compensation has been willful within the meaning of 29 U.S.C. § 255(a).

195.    Plaintiffs have been damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### (VIOLATION OF THE NEW YORK MINIMUM WAGE ACT)

196.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

197.    At all times relevant to this action, Defendants have been Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants have had the power to hire and fire Plaintiffs, have controlled the terms and conditions of employment, and have determined the rates and methods of any compensation in exchange for their employment.

198.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, have paid Plaintiffs less than the minimum wage.

199.    Defendants' failure to pay Plaintiffs the minimum wage has been willful within the meaning of N.Y. Lab. Law § 663.

200.    Plaintiffs have been damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE
### NEW YORK STATE LABOR LAW)

201.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

202.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq.* and supporting regulations of the New York State Department of Labor, have failed to pay Plaintiffs overtime

compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

203.    Defendants have failed to pay Plaintiffs in a timely fashion, as required by Article 6 of the New York Labor Law.

204.    Defendants' failure to pay Plaintiffs overtime compensation has been willful within the meaning of N.Y. Lab. Law § 663.

205.    Plaintiffs have been damaged in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION
### (RECOVERY OF EQUIPMENT COSTS)

206.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

207.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, such as bicycles, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

208.    Plaintiffs were damaged in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice, pursuant to 29 U.S.C. § 216(b), to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (including the prospective collective class members);

(c)     Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (including the prospective collective class members);

(d)     Declaring that Defendants' violation of the provisions of the FLSA has been willful as to Plaintiffs (including the prospective collective class members);

(e)     Awarding Plaintiffs (including the prospective collective class members) damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(f)     Awarding Plaintiffs (including the prospective collective class members) liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(g)     Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(h)     Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants' violations of the New York Labor Law have been willful as to Plaintiffs;

(j)     Awarding Plaintiffs damages for the amount of unpaid minimum and overtime wages, damages for any improper deductions or credits taken against wages;

(k)      Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(l)      Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(m)     Awarding Plaintiffs (including the prospective collective class members) pre-judgment and post-judgment interest as applicable;

(n)      Awarding Plaintiffs (including the prospective collective class members) the expenses incurred in this action, including costs and attorneys' fees;

(o)      Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(p)      All such other and further relief as the Court deems just and proper.

Dated: New York, New York
      May 29, 2015

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:      _____
              Michael Faillace [MF-8436]

MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael A. Faillace [MF-8436]
60 East 42nd Street, suite 2020
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620

- 30 -